Gaston, Judge,
 

 after stating the case, as above, proceeded : —In support of this decision, it has been insisted here, that the true line of John Osborne from the gum, wherever it can be ascertained, is the boundary of Flan-nigan’s grant, and cannot be departed from : that although Osborne’s line, previously to 1795, might have run from C to D, yet that upon the execution of Adlai Osborne’s deed, which preceded the grant to Fiannigan by two years, it was extended out to C L; and that in legal intendment, the call in Flannigan’s grant for Osborne’s line, is for Osborne’s line then existing; and not for a line of Osborne’s, which had formerly existed, but^was not then in being.
 

 We do not assent to this reasoning. In the first place, it is to be borne in mind, that when Flannigan’s grant calls for Osborne’s lines, it does not call for them simply by that name, but it adds other descriptions to identify them; “running with three of his lines north sixty-four degrees east, one hundred and fourteen poles, to a pine; north eighty-eight poles, to a hickory, and north thirty-four degrees west, forty-three poles, to a stake in Osborne’s
 
 *430
 
 line.” Of the boundary in question, there are then three descriptions — it is Osborne’s line' — it runs north sixty-four degrees east one hundred and fourteen poles — and it runs from a gum to a pine. When all the descriptions of a boundary in a deed or grant can be máde to agree, they must all be observed. When • they disagree, and some must be rejected, then that description, or those descriptions should be preferred, which the law regards as comparatively more certain. In this scale of legal certainty, the first rank is assigned to those permanent and striking monuments of the
 
 natural
 
 objects called for in the instrument, in regard to the existence and locality of which, a mistake is almost impossible; and the next rank is given to the less permanent and notorious, but still permanent and notorious monuments then erected, or then marked to show forth the boundaries intended by the parties. Had it been ever so clearly established, that at the' date of Flan-nigan’s grant,..the line C L was
 
 notoriously
 
 Osborne’s line, and that there was no other which had ever borne that name, it was still competent for the plaintiff to show the originally marked corner pine yet standing at D; or to prove that it had stood at that point; or to prove a line of marked trees, either existing, or shown lto have existed at date of Flannigan’s grant, extending from C to D ; and in either case, it would have been the duty of the Court to instruct the jury, that such monuments, if established to their satisfaction, to have been made as and for Flanni-gan’s corner, or Flannigan’s line from the gum to the pine, were to be respected, rather than Osborne’s line, as affording more certainty in regard to the extent of the land intended to pass by the grant. With respect to the conflict between the call for another’s line, and the course and distance by which it is described, there is not the same decided legal preference. Where this line is shown to have been well established and notoriously known, it is reasonably regarded as yielding greater certainty than the other description; but where it is not a well-known marked line, and especially if an observance of it shows so gross a mistake in the course and distance, as shocks probability, it is more safe to adhere to the latter, and reject the former.
 

 
 *431
 
 But the call for another’s line, is not necessarily a call for his
 
 true
 
 line. It means the line bearing that appellation, and reputed to be such. Of course, in the absence of all proof tending to show a difference between the true and the reputed lines, they will be presumed to be the same; but they may be shown to be different. Thus, if there have been two lines bearing the same name, the reference will be understood to apply to the one or the other, acccord-ingly as extrinsic evidence, or the other descriptions in the deed, shall show the one or the other to have been intended. If, for instance, in the present case, from 1773 to 1795, the line C D was John Osborne’s line, and in 1795, in consequence of the deed from Adlia Osborne, this line was extended
 
 out
 
 to C L, it is open for inquiry by extrinsic evidence, whether in 1797, the former had lost its appellation altogether, and the latter had become known in the neighbourhood as Osborne’s line. If such were the fact, and there were no additional descriptions in Flannigan’s grant, to designate the line, then the new line, as being the one bearing exclusively that name, must be deemed the line contemplated by the parties to the grant. But if the old line had not lost its name, and the new had not acquired it, clearly, on the same principle, the old¿ must be understood as the line called for. In the present case, however, the Court was bound to hold that the reference in Flannigan’s grant, was to Osborne’s line, under the grant of 1773, and not to his line under the deed of 1795, because of the additional descriptions and references in Flannigan’s grant. The calls from the gum are to go with
 
 three
 
 of Osborne’s lines, and the courses and distances of two of these, and the course of the third, are set forth, north sixty-four degrees, east one hundred and fourteen poles, to a pine; north, eighty-seven poles, to a hickory; and north, thirty-four . degrees west, forty-three poles, to a stake in his line. If the lines of Osborne’s grant be meant, there is a perfect correspondence between all the lines
 
 described,
 
 and all those
 
 referred
 
 to. If those of Osborne’s deed be meant, the entire description in the first line, and the course of
 
 *432
 
 the second, must be rejected as erroneous and deceptive; and they must run, not north sixty-four degrees east, to a P*ne’ norl^ sixty-one degrees east, to a, stake; and not north, but north three degrees west, to a hickory. Such a construction ought to be puf on the grant, if it may be, as will give to every part of it a= sensible effect.
 

 A deed, by^tbíT^ -owner of ing tracts”" for one of containing no averment as to thebounda-ri®s of,the not estop showing1 the true of the other tir'd^ conveying estate for life of the hehST88’ right upon one'of*’11 °f them to undivided though he declared for the whole.
 

 Something has been said about an estoppel, but the argument> whether well or ill pursued, is founded on a-' mistake. There is no averment in David Flannigan’s deed, that the land thereby conveyed, is the land which-had been granted to Noble and John Osborne. There is no recital that the line from the gum north, sixty-one degrees-east t0 a stake, is the line of his grant. The question of . ,
 
 r
 
 , ,
 
 , . .
 
 boundary, therefore, was perfectly open to both sides — to evidence on behalf of the plaintiff, that C D was the line of Flannigan’s grant; and to evidence on behalf of the defendant that C L was the line. If C L be established-as the line, the plaintiff must fail altogether. If C D be established, yet as the ancestor of the plaintiff’s lessor in conveyed up to-the line C L,
 
 his
 
 interest, so far as-that deed purported to convey it; passed thereby. This deed operated, not by estoppel, but to pass an estate. By this deed, however, the bargainees acquired estates kut f°r the term of their respective lives-; and if C D! be the true line, then the reversionary interest in the piece 'n controversy remained in David Flannigan. Upon the death of one of these bargainees, the right to immediate possession accrued to the reversioner or his heir, or ass-’Snee’ -A-nd it is not to be questioned at this day, but that on a demise for an entire tract, the plaintiff may show title to an undivided part thereof. In this way, the lessor of the plaintiff might have entitled himself to a judgment for an undivided part. Perhaps he might have established a right for the whole. The sheriff’s deed was colour of title to
 
 all
 
 the land embraced within it,, and accompanied by a- proper possession, of sufficient duration, it would ripen into a valid and indefeasible title.
 

 This Court is of opinion, that the evidence proposed to
 
 *433
 
 be given was admissible. The judgment below is therefore to'be reversed, with costs, and a new trial ordered.
 

 Per Curiam. Judgment reverséd.