CAROLINA & NORTHWESTERN RAILWAY CO. v. PENNEARDEN LUMBER & M'F'G CO.

(Filed May 12, 1903.)

1. EMINENT DOMAIN—*Railroads—Summons — Special Proceedings—The Code, Secs. 199, 278, 279, 1943.*

   A special proceeding for the purpose of condemning land for railroad purposes must be begun by the issuance of a summons.

2. BURDEN OF PROOF—*Eminent Domain—Railroads—Special Proceedings—The Code, Secs. 1932–2006.*

   In a special proceeding by a railroad company to condemn land for railroad purposes, the burden of showing that the company intended in good faith to construct the road and had complied with the requirements prescribed by law for the condemnation of a right of way, is on the petitioner.

ACTION by the Carolina & Northwestern Railway Company against the Pennearden Lumber and Manufacturing Company, heard by Judge *B. F. Long,* at February Term, 1903, of the Superior Court of CALDWELL County. From a judgment for the plaintiff, the defendant appealed.

*C. E. Childs* and *Battle & Mordecai,* for the plaintiff.
*Edmund Jones,* for the defendant.

CONNOR, J.    This proceeding was instituted for the purpose of condemning a right of way over the lands of the de-

fendant for the use of the plaintiff's railroad, pursuant to the provisions of Chapter 49, Vol. 1 of The Code. The plaintiff's attorneys issued on November 10, 1902, the following notice to the defendant: "You will please take notice that on the 20th November, 1902, at 3 o'clock p. m. a hearing in the above entitled cause, upon the petition therein filed, will be had before J. V. McCall, clerk of this court, the same being a petition to condemn real estate for railroad purposes, owned by you, a copy of said petition, map and profile of the same are herewith sent. J. H. Marion, C. E. Childs, petitioner's attorneys. Dated 10th day of November, 1902."

The notice was served on George O. Shakespeare, general manager of the defendant, on November 10, 1902, by reading the same to him and delivering a copy of the notice with a copy of the petition, map and profile, by the sheriff of Caldwell County. The plaintiff on the same day filed in the office of the clerk of the Superior Court of said County, its petition in which it alleges—its incorporation and organization; that the defendant is a corporation, and the petitioner is operating a railway over its own line from the town of Chester, S. C., to the town of Lenoir in this State; that it is its intention and purpose in good faith to extend its line and to construct and finish a railroad from the town of Lenoir, through the Counties of Caldwell and Watauga, to the Tennessee line; that it has duly complied with the terms and conditions of its charter in respect to the location and extension of said line of railway; that the defendant owns a tract of land in said County, a full description of which is attached and marked Exhibit A; that a portion of the land is required for the purpose of constructing and operating said railroad, which the plaintiff intends to build; that said portion of said land is fully described in a paper attached marked B, and a certain map, profile, etc.; that the petitioner has not been able to acquire a right of way over said land or agree upon a

price with the defendant, accompanying the petition are the maps, etc.

On the day named in the notice, November 20, 1902, the defendant by its counsel entered a special appearance before the clerk, and made a motion to dismiss the proceeding for that no summons or other proper notice was issued from the court, and that no summons or proper notice was served upon the defendant and that the court had not acquired jurisdiction. The clerk declined to allow the motion and the defendant appealed to the Superior Court in term. The plaintiff's counsel objected to allowing the appeal at this time upon the ground that the order refusing the motion was interlocutory. The clerk intimating that he would proceed with the hearing, the defendant filed an answer, which the clerk held raised issues of fact, and transferred the cause to the civil issue docket.

The defendant in its answer demanded strict proof of the plaintiff's capacity to sue, etc., admitted its own corporate existence, and that the plaintiff was operating a railway as alleged, and denied the remainder of the allegation of intention to build or extend its road. It admitted its ownership of the land sought to be condemned, and denied that no one else had any interest therein. The other portions of the petition were denied.

For further answer the defendant averred that it was the owner of about 43,000 acres of timber land on the waters of Wilson's Creek; that the proposed road would cross said land and that said land was chiefly valuable for timber thereon; that said timber and the facilities for manufacturing the same had cost the defendant more than $60,000; that for the purpose of utilizing this timber and of supplying a large mill belonging to the defendant at Lenoir, N. C., a distance of 20 miles, it became necessary to construct a railroad from Lenoir to Wilson's Creek, for which purpose, and for the fur-

ther purpose of extending said road across the Blue Ridge Mountains to connect with a system of railroads of Tennessee, the Caldwell & Northern Railway was chartered and organized, and it has built and equipped a line of road from Lenoir to Collettsville, a distance of ten miles; that it intends to build the said road up Wilson's Creek; that said road is now a common carrier, and in daily operation to within about four miles to what is known as the "Gorge" of said creek; that the plaintiff's road extends no further than Lenoir, a distance of 14 miles away; that the said Caldwell & Northern Railroad Company now has a corps of engineers locating its line from Collettsville to the said gorge, and also has a force of hands at work in said gorge, grading its road; that almost the entire capital stock of the Caldwell & Northern Railroad Company is owned and controlled by stockholders of the defendant company; that owing to the physical conformation of the country, there is no practicable line of railway, except through the gorge of said creek, and owing to the narrowness and almost precipitous sides of said gorge, there is room on the east side for only one track, without a vast and ruinous expenditure; that the defendant has already conveyed by deed to the Caldwell & Northern Railroad Company the right of way sought to be condemned by the plaintiff; that it is not necessary that the plaintiff should acquire a right-of-way through said gorge, as a line up and along John's River is entirely practicable to it, as short if not shorter than the proposed line up Wilson's Creek; that the map or profile attached to the plaintiff's petition is not in accord with the statutory requirements.

The cause coming for trial at the regular term of the Superior Court, the defendant again entered a special appearance, and brought forward the exceptions taken before the clerk for that no summons or other proper notice had been issued, and that it was not in court by "due process of law";

that the court had no jurisdiction, etc.    His Honor overruled the motion to dismiss the proceeding and the defendant excepted.

The defendant thereupon moved the court to dismiss for that the map and profile are not a compliance with Chapter 396 Private Laws of 1893.    The motion was denied and the defendant excepted.

His Honor thereupon submitted to the jury the following issues:

1.    Does the map served with the notice on November 10, 1902, by the plaintiff on the defendant, show how the line of the road is located on the land sought to be condemned?    Yes.

2.    Does the profile served at the same time show the depth of the cuts and the height of the embankments on the land sought to be condemned, and at what points on the land such cuts and embankments are located?    Yes.

3.    Has the plaintiff been unable to agree with the defendant for the purchase of the land required for its proposed road?    Yes.

4.    Is it the intention of the plaintiff in good faith to construct and finish the proposed road as alleged in the petition?    Yes.

5.    Did the defendant on November 17, 1902, execute to the Caldwell & Northern Railroad Company the deed of bargain and sale marked Exhibit X for the easement or right of way in the land sought to be condemned in this proceeding?    Yes.

The parties introduced testimony tending to establish their respective contentions upon the several issues.    The defendant made a number of requests for instructions, some of which were given either as asked or as modified, and some denied.    In the view which we take of the case.    It is not necessary to set out or pass upon the rulings of the court below upon these prayers for instructions.

The court charged the jury that the burden of proof was upon the defendant upon the *first issue* "to show by a preponderance of evidence that the map does not show how the line of the proposed road is located on the defendant's land;

That the burden was upon the defendant upon the *second issue* to show by preponderance of the evidence that the profile does not show the depth of cuts and height of embankments on the line of the proposed road on the defendant's land;

That the burden was upon the defendant upon the *third issue* to show by preponderance of evidence that the petitioner was not, before this proceeding was begun, unable to agree with the defendant for the purchase of the land at a reasonable price;

That the burden was upon the defendant upon the *fourth issue* to show by preponderance of the evidence that it was not, when this proceeding was begun, or is not now the intention in good faith of the petitioner to construct and finish the proposed line of road from Lenoir to the Tennessee line.

To each of these instructions the defendant excepted and assigned the same as error. Upon the coming of the verdict, the defendant moved for a new trial for the errors assigned. This being refused the defendant excepted. The court rendered judgment remanding the cause to the clerk with directions to appoint commissioners to assess the compensation which the petitioner should pay the defendant for the land condemned. The defendant excepted. The commissioners were appointed by the clerk—the defendant excepting. They made their report to which the defendant also excepted. The report was confirmed. The defendant excepted and from the final judgment appealed to this court.

It is not necessary for us to consider the exceptions to the proceedings subsequent to the judgment of Judge Starbuck, as we are of opinion that there are errors fatal to the

proceeding in the record prior to that judgment. We will consider only two of the defendant's exceptions:

1. That there was no summons or citation issuing from the Superior Court.

2. That his Honor was in error in placing upon the defendant the burden of proof upon the several issues submitted to the jury.

We are aided in the decision of this cause by excellent, full and well considered briefs and arguments.

The first exception presents the question whether the court has ever acquired jurisdiction of the person or the subject matter in this proceeding. While there was some confusion incident to the change of our judicial system wrought by the Constitution of 1868 and the introduction of The Code of Civil Procedure, in regard to the distinction between "civil actions" and "special proceedings", it is now well settled that with a few statutory exceptions, not necessary to be enumerated, every judicial proceeding known to our system of remedial justice is either a civil action or a special proceeding. It is equally well settled that, with the exceptions referred to, jurisdiction is acquired by the issuing and service made upon or accepted by the defendant of a summons. These propositions may at this time be regarded as beyond the domain of discussion. The summons is the substitute for the original writ in common law actions, and the subpoena in suits in equity. The action (or proceeding) is begun when the summons is issued as original process. *Fleming v. Patterson,* 99 N. C., 404. The petitioner contends that this proceeding is neither a civil action nor a special proceeding. Section 1943 of The Code prescribes: "In case any company. . . . . is unable to agree for the purchase of any real estate required for the purpose of its incorporation, shall have the right to acquire title to the same in the manner and by the *special proceeding* prescribed in this chapter." While Chapter 49 of

The Code is composed of several Acts of the legislature, it has its force and effect by virtue of its enactment in, and as a part of, the Code of 1883.    The Code, Sec. 3876; *State v. Chambers,* 93 N. C., 600.    The Code expressly provides that "civil actions shall be commenced by issuing a summons".    Section 199.    "The provisions of The Code of Civil Procedure are applicable to special proceedings, except as otherwise provided."    Sec. 278.    The next section, 279 prescribes the form of the summons in special proceedings.    Sec. 287. When the term "special proceeding" is used in Section 1943, it must be construed to have same meaning as in other sections of The Code.    This is essential to an orderly and systematic procedure.    In a proceeding to secure the right of drainage, commenced by a summons, Smith, C. J., said: "Undoubtedly a case should be constituted between proprietors of adjoining lands before the appointment of commissioners."    *Durden v. Simmons,* 84 N. C., 555.    After reviewing the several statutes on the subject of procedure in such cases, he says: "This construction gives force to both acts, and produces harmony and consistency in their application to the classes of cases in which each was intended." p. 559.    The Court of Appeals of New York has held that a proceeding to condemn land for railway purposes is a special proceeding.    Matter of *Cortland v. Horse Railway Co.,* 98 N. Y., 336; 1 Enc. Pl. & Pr., 114.    It is true that section 1943 of The Code provides that upon the filing of the petition, a copy thereof with notice of the time and place when and where the same shall be heard, must be served on all persons whose interests are to be affected.    This is not inconsistent with the general provision of The Code requiring that a summons issue as the original process giving the court jurisdiction.    It is not easy to understand why the law should require that a summons must issue in a civil action involving the title to a cow or horse, and in Special Proceedings; where-

as that, in the exercise of the right of eminent domain given
by the State to a corporation involving valuable rights of
property, a simple notice signed, as in this case by two gen-
tlemen of the Bar as "Petitioner's Attorneys" is sufficient.
In all other proceedings, jurisdiction is acquired by a com-
mand "from the State of North Carolina", issuing out of
"our Superior Court"; whereas in this proceeding a simple
notice or polite letter is addressed to the defendant.  It may
be that we should construe the word "notice" in harmony
with the general provisions of The Code to mean *summons,*
thereby conforming the proceeding from its inception to its
conclusion, to the general system of procedure.  This con-
struction harmonizes the statute with the underlying prin-
ciple of our government "that no man shall be deprived of
his life, liberty or property, except by due process of law".
Due process implies correct and orderly proceedings which
are due because they observe all the securities for private
rights which are applicable to particular cases." Civil Rights
Cases, 109 U. S., 3.  This construction of the statute is also
in harmony with the well settled principle that the authority
to exercise the right must be strictly construed.  "In con-
struing statutes, which are claimed to authorize the exercise
of the power of eminent domain, a strict rather than a liberal
construction is the rule.  Such statutes assume to call into
active operation a power, which, however essential to the
existence of the government, is in derogation of the ordinary
rights of private ownership and of the control which the
owner usually has of his property.  The rule of strict con-
struction of condemnation statutes is especially applicable to
delegations of the power by the legislature to private corpora-
tions."  Matter of Poughkeepsie Bridge Co., 108 N. Y.,
490 ; Lewis on Eminent Domain, Sec. 253 ; 7 Enc. Pl. & Pr.,
468.  It is true that in *Click v. Railroad,* 98 N. C., 390, being
a proceeding instituted by the owners of land over which the

defendant had built its track, the court said: "This is neither a special proceeding nor a civil action as defined by The Code. It is a *summary proceeding*". The appellee's very accurate and learned counsel has shown to us by the original record in his argument that the names of the land owners were signed to the notice by the counsel. With the utmost deference to the learned Justice delivering the opinion, we find no authority in The Code or any statute for calling the proceeding a "summary proceeding". As we have seen the legislature has called it a "special proceeding" and we think correctly so. Nothing is decided in that case in conflict with the question presented in this, because no objection was made to the notice or the form of the procedure, hence in the conclusion to which we have arrived we are not called upon to overrule the case.

We are of the opinion that the proceeding authorized by Section 1943 of The Code is a special proceeding and that a summons should issue as in all other cases. The clerk should have allowed the defendant's motion, or at least have issued a summons retaining the cause until the return day. His Honor was in error in refusing the motion.

The decision of this question puts an end to this proceeding but among other exceptions there is one which may arise upon another trial in a proceeding properly begun, which we think should be settled. His Honor put the burden of proof upon the defendant upon the several issues. In this he was in error. We presume that he was led to make this ruling by the peculiar language of the statute. The exact question has been decided in New York construing a statute in the same language as ours: "That the court shall have the proofs and allegations of the parties and if no sufficient cause is shown against granting the prayer of the petitioner, it shall make an order for the appointment of commissioners." The court said "It is claimed on the part of the company and the court at special term held, that this section cast upon the respon-

dent the burden of proving that the lands were not required
for any purpose stated in the petition, and that in default of
such proof the petitioner was entitled to the order.    The pro-
vision that the land owner may disprove the allegations of the
petition gives color to this construction, but it seems to us con-
trary to the general intent of the Act.    The provision secur-
ing notice and a right of being heard to all persons interested
and requiring the court to hear the proofs and allegations of
the parties, show that the legislature intended that the land
owners should not be deprived of their property except by a
judicial trial, or investigation and determination of the
right claimed by the corporation and that this was to be a
substantial protection and not a mere matter of form."
Matter of N. Y. Cen. R. R. Co., 66 N. Y., 407.    "When the
allegations of the petition are controverted such averment
does not relieve the plaintiff of the necessity of making strict
proof of its right to take defendant's property."    *Rochester
Ry. Co. v. Robinson,* 133 N. Y., 242.    The law is as held in
these cases.

It would be a strange conclusion that the owner of land
could not prevent the taking of his property unless he could
disprove the allegations of the corporation seeking to take it,
by showing for instance that it did not in good faith intend
to build its road and other material facts resting almost, if not
exclusively in the breasts of the agents of the corporations.
This would be to give to the petitioner an advantage not
accorded to other suitors.    The general rule, with some ex-
ceptions, in regard to the *onus probandi* being that the party
holding the affirmative issue has the burden of proving it.
We do not pass upon the proficiency of the map and profile,
but it appears to us from the testimony that they do not sub-
stantially comply with the requirements of the statute.    The
proposed right of way is through a narrow gorge of a creek
in precipitous mountains.    It is said that but one track can

be laid.    It is therefore very material that an accurate survey be made and a map filed showing clearly and distinctly where the proposed road is to be located.    The averments in the answer, in regard to which there is evidence, show that it is a matter of very great interest to the parties whose lands are to be affected, to have a strict compliance with the statute in this respect.

Proceeding Dismissed.