The South and Western Railroad Company filed its answer denying the allegations of the petition and setting up the fact that it had, prior to the institution of this proceeding, located its line on the land sought to be condemned and purchased same, and that the land was necessary for the exercise of its franchise and the discharge of its duties.
The Clerk appointed commissioners to assess the damages, and the South and Western Railroad Company excepted to this order.
Prior to the order appointing commissioners the Johnson City Southern Railway Company made a motion to be allowed to take possession of the land sought to be condemned, which was granted by the Clerk, and from this last-mentioned order the South and Western Railroad Company appealed to the Judge, and the order was reversed on appeal.
In the meantime, however, the commissioners had made their report, *Page 48 
and the Johnson City Southern Railway Company paid into court the sums ascertained by the commissioners and continued in possession.
The South and Western Railroad Company filed exceptions to the report of the commissioners, but the Clerk confirmed the same; whereupon the South and Western Railroad Company assigned error and appealed to the court.
The cause was tried in the Superior Court, at September Term, 1907, and a judgment was rendered denying the right of the Johnson City Southern Railway Company to condemn the locus in quo. From this judgment this appeal is taken to this Court by the Johnson City Southern Railway Company.
after stating the facts: When the cause was called for trial in the Superior Court, in term, upon defendants' exceptions to the order of the Clerk and the appeal therefrom, the plaintiff tendered certain issues not necessary to be set out. The court, being of opinion that all of said issues, except the last two, presented questions of fact to be tried by the court, declined to submit them to the jury. Plaintiff excepted. The two issues directed to the question of benefits and damages the court reserved until the preliminary questions were disposed of. In view of his Honor's judgment upon the questions of fact and law, these issues became immaterial. This constitutes plaintiff's first assignment of error. We concur in his Honor's ruling. The plaintiff, as required by section 2580, Revisal, stated in its petition that it had been duly chartered; that it was its intention in good faith to construct, finish and operate a railroad from and to the termini named in its charter; that its capital stock, as required by its charter, had been subscribed and the portion thereof required to entitle its organization and commencement of operation had been paid in; that it had been unable to acquire title to the lands necessary for its right of way or the easement thereon, and the reason of such inability. It must in all respects comply in its petition with the requirements of section 2580. Until this is done and these allegations are made, and, if denied, found to be true by the court, the right to exercise the right of eminent domain and condemn the right of way is not established. They may be said in a certain sense to be jurisdictional. It is elementary that statutes prescribing the method of procedure to condemn lands or easements therein are to be construed strictly. This is especially true when the right of eminent domain is conferred upon a private corporation, as *Page 49 
distinguished from a public one, or municipality. R. R. v. Lumber Co.,132 N.C. 644; Lewis on Em. Dom., sec. 253; Cooley Const. Lim., 763; Fore v.Hoke, 48 Mo. App. 254; Adams v. Clarkson, 23 W. Va. 203.
When these essential averments are made and denied, how shall the court (the Clerk) proceed? It is manifest that the pleadings, (64) in this condition, do not raise "issues of fact," requiring the cause to be transferred to the civil issue docket, as required by section 529, Revisal. These preliminary questions are to be decided by the Clerk. If he finds against the petitioner upon them, he dismisses the proceeding, and, if so advised, the petitioner excepts and appeals to the Judge, who hears and decides the appeal. If the Judge affirms the Clerk, an appeal lies to this Court from his conclusions of law. If the Clerk decides the preliminary questions against the defendant, he notes exceptions and makes an order for the appointment of the jury to view the premises and assess the benefits and damages. Upon the coming in of the report, if either party so desires, he may file exceptions to the report, which will be heard as provided by section 2587, and from the judgment rendered thereon appeal to the Superior Court. The appeal takes the entire record up for review. Hendricks v. R. R., 98 N.C. 431. The ruling of the Clerk, to which the defendant excepted upon the hearing before the Judge, as in this case, came up for review upon the trial. Neither party is entitled to trial by jury until the coming in of the report and after it is confirmed. R. R. v. Newton, 133 N.C. 132;R. R. v. Stroud, 132 N.C. 413; Porter v. Armstrong, 134 N.C. 447. The practice in this respect is well settled, and was pursued in this case in strict accordance with the statutes and the decisions of this Court. Formerly, under the statute and decisions, upon appeal neither party was entitled to trial by jury upon any of the controverted questions (Davis v. R. R., 19 N.C. 431) unless the charter so provided. This has been held by a number of decisions of this Court. In several cases, as in R. R. v. Lumber Co., supra, no objection was raised to the trial by jury. By the statute (1893, ch. 148; Revisal, sec. 2588) it was provided that, in condemnation proceedings by any railroad or by any city or town, "any person interested in the land, or the (65) city, town, railroad or other corporation, shall be entitled to have the amount of damages assessed by the commissioners or jurors heard and determined upon appeal before a jury of the Superior Court, in term, if upon the hearing of such appeal a jury trial be demanded." This limitation upon the right to demand trial by jury clearly excludes the idea that any such right is given in respect to the questions of fact to be decided preliminary to the question of damages. In Durham v.Riggsbee, 141 N.C. 128, the question presented upon this exception is *Page 50 
discussed by Mr. Justice Brown. Referring to the allegation that the petitioner has been unable to acquire the title, and the reason therefor: "While this is a necessary allegation of the petition, it is not anissuable fact for the jury to determine. The Judge was right in refusing to submit it to the jury. . . . Since the act of 1893 (Revisal, sec. 2588) the defendants had a right to demand a jury trial upon the matter of compensation." The exception cannot be sustained. The plaintiff insists that the findings of the Clerk in regard to the preliminary allegations are final. This is settled adversely to the contention by a number of decisions of this court. Porter v. Armstrong, supra.
It is urged that the exceptions to the Clerk's order appointing the commissioners are not sufficiently explicit and do not raise the questions decided by the Clerk. We do not find any statute or rule of the Court requiring that any specific exceptions be made to the Clerk's orders in the progress of the proceedings. Either party may except generally and, upon appeal, present any question appearing upon the record. This right, of course, is dependent upon proper denials of the matters alleged in the petition. The defendant, in addition to its general exception, makes a specific exception: "That the land described in the plaintiff's petition is not the subject of condemnation, as it is needed for defendant's road," etc. His Honor proceeded to hear the (66) testimony relating to the preliminary questions, upon the settlement of which petitioner's right to maintain the proceedings depended. A number of exceptions were noted to his Honor's ruling upon objections to the admissibility of testimony and assigned for error. They are not, however, referred to or discussed in the brief, and, under the rule of this Court, are taken to be abandoned. Rule 34,140 N.C. 66.
"Upon the close of the evidence the plaintiff offered to submit to nonsuit, and asked that judgment of nonsuit be entered, to which the defendant objects. The court, being of opinion that in this action the plaintiff is not entitled to nonsuit, overruled the motion, and the plaintiff excepts." That we may pass intelligently upon this novel question it is necessary to state a few facts in the record. The South and Western Railway Company, a domestic corporation, authorized by its charter to construct a railroad from Marion, in McDowell County, to the Tennessee line, at a point near Johnson City, was, prior to 1 December, 1905, in good faith constructing said road, and had already built from Johnson City to Spruce Pine, in North Carolina, and was operating the same. This line ran along the east bank of the Toe River and opposite the locus in quo, which lies along the west bank of said river. For the purpose of getting a better grade and one to correspond to the grade of *Page 51 
its line already constructed, the South and Western Railroad Company determined to change its line from the east to the west bank of the river, and, before the plaintiff entered upon the locus in quo, obtained options on the lands over which the line in dispute would pass, and on 1 November, 1905, commenced a survey of said lines from south to north, staking the line and cutting out the undergrowth. On 1 December, 1905, defendant company was duly chartered and organized, pursuant to the laws of this state, and on that day the engineer of the South and Western Railroad Company presented to the directors a profile and report, which was duly approved and adopted by said directors, who located the right of way set out and described in its answer, (67) it being the line in dispute. Thereafter, and in pursuance of a previous agreement, the said railway company conveyed to the defendant railroad company all of its rights and properties of every kind in Yancey and Mitchell counties. Defendant railroad company in good faith organized for the purpose of constructing and operating a railroad according to the provisions of its charter, and was, when stopped by the order of the Clerk in this proceeding, engaged in constructing its line over the locus in quo. On 16 June, 1905, the plaintiff was duly incorporated and organized, with authority to construct and operate a railroad from Marion, N.C. to some point on the Tennessee line near Johnson City. On or about 25 November, 1905, an assistant engineer in the employment of the Southern Railway Company and paid by it, without any authority from the board of directors of the plaintiff company, entered upon the locus in quo and surveyed the line claimed by the plaintiff, which crosses and interferes with the line claimed by defendant in a large number of places. On 27 December, 1905, W. H. Wells, the chief engineer of plaintiff company, made a report of said survey to the board of directors of said company, and the line claimed by plaintiff was adopted and located. The petition herein was filed in the office of the Clerk of the Superior Court of Yadkin County, 15 December, 1905. The return day of the summons was 4 January, 1906, when the defendant filed its answer to the petition. The hearing was continued, by consent, until 19 January, 1906. On 9 January, 1906, pursuant to notice, the plaintiff made a motion before the Clerk to be allowed to file a bond, to "the end that the plaintiff, Johnson City Southern Railway Company, be allowed, authorized and empowered to hold exclusive possession of all the pieces, parcels or tracts of land in dispute between the parties in the above-entitled cause, and to hold the same without molestation or interference from defendant, South and Western Railroad Company, its agents or employees, until (68) the final termination of the above-stated proceedings." This notice was served on 8 January, 1906. On 9 January, 1906, the Clerk *Page 52 
granted the motion and made an order that, upon filing a bond in the sum of $1,000, "the plaintiff is hereby allowed, authorized and empowered to take exclusive possession of the lands described in the petition in this cause." To this order defendant filed exceptions and appealed, but did not prosecute its appeal. The bond was filed. On 19 January, 1906, the Clerk, having refused to grant a continuance upon defendant's motion, made an order appointing commissioners of appraisal, etc., in accordance with the prayer of the petition. He directed that they meet on the premises on 22 January, 1906, and condemn the right of way over the lands, assess the damages, etc. To this order defendant filed exceptions and appealed. On 24 January, 1906, the commissioners made their report to the Clerk, assessing the damages on the several tracts of land described in the petition, etc. To this report defendant filed exceptions. On 6 March, 1906, the Clerk confirmed the report. The defendant filed exceptions and appealed to the Superior Court. The plaintiff paid into court the amount assessed as damages.
These facts were before his Honor when, after hearing the evidence, plaintiff proposed to take judgment of nonsuit. It will be observed that a surveyor of another corporation made a survey of the land, and, in some way not very clearly stated, plaintiff entered and began work on the land. It does not allege in its petition that it was in possession. The order of the Clerk of 9 January, 1906, placed plaintiff in the exclusive possession of the entire land and enjoined defendant from interfering therewith. Whether or not this order was erroneous, as it seems to us it was, the plaintiff, from and after its date, was in possession under and by virtue of it. It is the uniform practice and the usual procedure in civil actions that, at term time, before verdict, the plaintiff (69) may, if defendant has not set up any counterclaim or shown in the pleadings any right to affirmative relief, submit to judgment of nonsuit. This is elementary. Prior to the introduction of the Code practice there was no reason why the plaintiff might not retire from court by paying the cost. The only pleading open to defendant was the general issue or by way of confession and avoidance, in either case resulting, if established, in defeating the plaintiff's action. In equity a different practice prevailed. The complainant was entitled, with the consent of the Chancellor, to withdraw his bill, provided no decree or decretal order had been made by which the defendant acquired the right to have the entire matter brought into controversy settled. In Purnellv. Vaughan, 80 N.C. 46, Smith, C. J., quoting Daniel Ch. Prac., 930: "After a decree, however, the court will not suffer a plaintiff to dismiss his own bill, unless upon consent, for all parties are interested in a decree, and any party may take such steps as he may be advised to have the effect of it." Chancellor Walworth, in Wate v. Crawford, 11 Paige, *Page 53 
ch. 470: "Before any decree or decretal order has been made in a suit in chancery, by which a defendant has acquired rights, the complainant is at liberty to dismiss his bill upon payment of costs. But after a decree has been made, etc., the bill cannot be dismissed without destroying these rights." In Purnell's case the court had acted, suspended the sale by the mortgagee, ordered a reference for an account, etc. The motion by plaintiff to dismiss his action was denied. The same question arose in Bynum v. Powe, 97 N.C. 374, in which Merrimon, J., said: "Under the present method of civil procedure there is but one form of action, and the plaintiff, as indicated above, may, no matter what may be the nature of the cause of action, voluntarily submit to a judgment of nonsuit, except that in cases purely equitable in their nature he cannot do so after the rights of the defendant in the course of the actionhave attached, that he has the right to have settled and concludedin the action. . . . This is reasonable, and rests upon (70) grounds of manifest justice." Gatewood v. Leak, 99 N.C. 363. In Boyle v. Stallings, 140 N.C. 524, we held that plaintiff was not entitled to dismiss his action after an account had been taken and exceptions filed. In Bank v. Rose, 19 S.C. (Rich Eq.), 292, Harper,Ch., says: "The exception, stated in general terms, is that it is within the discretion of the court to refuse him permission to do so if the dismissal would work a prejudice to the other parties." He further says that, if the dismissal would put the "defendant to the expense and trouble of bringing a new suit and making his proofs anew, such dismissal will not be permitted." In Connor v. Drake, 1 Ohio St. 166, it is said: "The propriety of permitting a complainant to dismiss his bill is a matter within the sound discretion of the court, which discretion is to be exercised with reference to the rights of both the parties, the defendant and the complainant. After a defendant has been put to trouble and expense in making his defense, if, in the progress of the case, rights have been manifested that he is entitled to claim, and which are valuable to him, it would be unjust to deprive him of them merely because the plaintiff might come to the conclusion that it would be for his interest to dismiss his bill. Such a mode of proceeding would be trifling with the court, as well as the rights of defendants." It has been repeatedly held that a proceeding for condemnation is a "special proceeding" and not a "civil action." Sumner v. Miller, 64 N.C. 688;R. R. v. Lumber Co., 132 N.C. 644; Clark's Code, p. 10. In many respects the proceeding, unless otherwise prescribed by statute, is assimilated to that prevailing in courts of equity. The facts found by his Honor and apparent upon the record clearly demonstrate the wisdom of the refusal to permit the plaintiff to submit to a judgment of nonsuit. *Page 54 
Conceding that, as found by the Clerk, both parties were in possession of the locus in quo on 9 January, 1906, we think it is very (71) doubtful whether, under section 2595, Revisal, the Clerk had the power at that stage of the proceeding to make the order ousting defendant and giving plaintiff the exclusive possession. Conceding, however, that, although erroneous, the order was efficient, as it appears to have been, the plaintiff was, from and after filing the bond, in the exclusive possession, under and by virtue of the order of the court. The defendant not only denied the allegations in the petition in regard to the preliminary and jurisdictional matters, but expressly and by way of further answer alleged that it was engaged in constructing a road over thelocus in quo, and that it was necessary for the prosecution of its work, etc. Thus, after passing the preliminary stages of the trial, the merits of the controversy involved the contested right of plaintiff and defendant to hold and occupy the right of way for their corporate purposes. To permit the plaintiff, after obtaining an order in the progress of the case
giving it exclusive possession and ejecting the defendant, to take a nonsuit, leaving the status quo thus acquired, would be manifestly unjust, and trifling not only with the court and the defendant, but with the large and important public interests involved in having a railroad constructed, giving to the people an outlet for travel and transportation. The right of eminent domain is conferred primarily for the public welfare and to be exercised and used for that purpose and under governmental control. It cannot be that the courts will permit a private corporation, upon which is imposed duties to the public, to use this sovereign power in a manner not only harassing to the citizen, but preventing other corporations having similar duties and rights from exercising them.
We concur with his Honor in refusing the motion: First, because the defendant had acquired rights "in the course of the action" of which it could not be deprived in this way. As said by Smith, C. J., in Purnell v. Vaughn, supra, "He who comes into a court of equity must (72) himself do equity, and the plaintiff cannot be allowed, after taking the advantages derived from his action, by putting an end to it to deprive the defendants of the advantages to which they are entitled." Second, the defendant, having in its answer set up new matter involving its rights to the exclusive occupation of the locus inquo for its corporate purposes, was entitled to have its claim adjudged and settled. Both corporations were claiming the right to construct a railroad connecting the coal fields with the cities of the seaboard. They allege that very large sums of money have been invested, and larger sums, awaiting the termination of this controversy, are for investment in the construction of this important line of railroad. It is not of so *Page 55 
much interest to the public which of two corporations build the road as it is that, by using the courts in the way suggested, they prevent either from doing so. If the course proposed by the plaintiff be permitted, the state has granted her franchise, with its sovereign power, to her own hindrance. If in creating two corporations she has conferred power upon both by which, through the instrumentality of her own courts, the building of railroads may be retarded, if not ultimately defeated, and her mountain fastnesses remain locked in their primitive isolation, the Legislature may well consider whether some restriction should not be put upon corporations enjoying such power. If the course proposed by plaintiff be permitted, railroad building may be "tied up" indefinitely by repeatedly renewed condemnation proceedings, contested until the end has been reached, and then withdrawn, only to be repeated in another form. Corporations cannot, unless by express power conferred by the Legislature, be permitted to so use the right of eminent domain.
His Honor proceeded to find the facts pertaining to the right of plaintiff to prosecute its petition. His judgment includes a number of findings which, while pertinent, were not necessary. We do not propose to set out or consider those not necessary to the determination of the appeal. The findings are, of course, conclusive, unless, as (73) insisted by plaintiff, they are not sustained by any evidence.
The tenth finding is: "That prior to the date of the verification of the petition filed in this proceeding the plaintiff made no effort to procure the right of way, either by purchase or condemnation, along any part of its projected line."
Eleventh: "That at no time has the plaintiff made any effort to procure, in any way, any right of way along the line mentioned in its charter, except over the locus in quo, and that by this proceeding."
These findings are sufficient to sustain the judgment. The evidence fully sustained his Honor's findings. Our attention is not called to any evidence to sustain the averment in the petition.
The plaintiff insists that, as defendant by its answer denies the right of plaintiff to condemn, it is relieved of the necessity of showing that it made an effort to acquire the title, and reason of failure; that it would be requiring it to do a vain thing. The allegation is required by the statute and the burden of proof is upon the plaintiff. R. R. v. Lumber Co.,supra. "In most of the states, by express provision either in the Constitution or by the statute, and in most cases by both, proceedings to condemn property cannot be instituted unless such an attempt has been made. . . . Such a provision is mandatory and not merely directory, and the condemnation proceedings are absolutely void in case no attempt is made, before beginning them, to come to an agreement with the owner." 15 Cyc., 821, 822; Allen v. R. R., 102 N.C. 381. *Page 56 
"The statute required the petition for condemnation and assessment to set forth that the parties could not agree. The petition failing to do so, the court said the averment was jurisdictional." Fore v. Hoke,48 Mo. App. 254. Referring to the statutory requirement, the Court, inAdams v. Clarksburg, 23 W. Va. 203, said: "The conditions must be regarded as conditions precedent, which are not only to be (74) observed and complied with before the right of the property owner is disturbed, but the party claiming authority under the adverse proceedings must show affirmatively such compliance." Maddenv. R. R., 66 Miss. 258; Mitchell v. R. R., 68 Ill. 286; R. R. v. Smith,78 Ill. 96. Plaintiff relies on the decision of this Court in Durham v.Riggsbee, 141 N.C. 128. Mr. Justice Brown said in that case: "These alleged facts are tantamount to a specific allegation in the words of the statute, and plainly show an effort on the part of the petitioner's officers to come to an agreement, and the reason of their inability to do so. If the amended petition was deficient in this respect, it is greatly aided by the admissions of the answer, for that shows clearly that the petitioner made initial efforts to negotiate and the defendant declined to do so." We find nothing in this language indicating a departure from the former decisions of this Court and the uniform current of authority elsewhere. In the petition filed by plaintiff herein it is alleged that the reason it could not acquire the title "was the failure to agree with the said owners, and those claiming an interest therein, as to the value of the same." We do not find any evidence tending to show any effort to agree with the owners in any respect. The whole evidence shows a purpose to get a location and proceed with the work. This is not permissible, under our conception of the property rights of the citizen. The plaintiff does not in its brief direct our attention to any evidence, either offered or admitted, tending to sustain the jurisdictional averment. While there is no specific assignment of error to his Honor's finding of fact, we have examined the record in that respect. His Honor also finds that plaintiff did not in good faith intend to construct a railroad over the line in controversy, but was incorporated for the purpose of hindering, delaying and obstructing the building of a railroad along the locus in quo by the South and Western Railway Company, (75) which was in good faith constructing a railroad from Johnson City, in Tennessee, to Spruce Pine, in North Carolina, and was operating the same. This line ran along the east bank of the Toe River and opposite the locus in quo, which lies along the west bank of the river.
"In order to obtain a better grade and one to correspond to the grade of its line already constructed and that was in progress of construction, the South and Western Railway Company determined to change its *Page 57 
line from the east to the west bank of said river, and, before the employees of plaintiff company or of the Southern Railway Company entered upon the locus in quo, obtained options on the lands over which the line in dispute would pass, and on 21 November, 1905, commenced a survey of said line from south to north, staking the line and cutting out the undergrowth along the line, until 25 November, 1905, when these surveyors met a party of surveyors employed and paid by the Southern Railway Company, who had commenced to survey said line from its northern terminus. This meeting was about 1,500 feet from the locus in quo. Maps and profile of the survey were made.
"On 1 December, 1905, the defendant obtained a charter, under the provisions of the Revised Code of North Carolina, and on that day duly organized the defendant company at Spruce Pine, in Mitchell County, North Carolina, and at said time and place the engineer of the South and Western Railway Company presented to the directors of the defendant company, in the meeting there and then assembled, the said maps and profile and report of said engineer, which said report, maps and profile were duly approved, and the said directors then and there adopted and located the right of way set out and described and claimed by defendant company in its answer, it being the line in dispute in this action.
"The defendant company was in good faith organized for the purpose of constructing and operating a railroad according to the provisions of its charter, and was, when stopped by the order of the Clerk in this proceeding, engaged in constructing its line over the locus in (76)quo, and since that time has been and is actively engaged on other parts of its line in constructing a roadbed of the best quality and of unusually low grades and few curves.
"On 24 December, 1906, in pursuance of a previous agreement, the South and Western Railway Company conveyed to defendant company all of its rights and properties of every kind in Yancey and Mitchell counties, which conveyance was registered in Yancey 31 December, 1906.
"It is impracticable to construct and run the two lines on the locus inquo."
There was evidence to sustain the findings. We find no reason for disturbing them. The profile filed with the transcript shows that the locusin quo is situate on the banks of the Toe (or Nolachucky) River, which runs through a narrow mountain gorge, the mountains being very high and almost perpendicular. There was, of course, a difference of opinion between the engineers in respect to this question. We think it very doubtful, upon the testimony and findings by his Honor, whether plaintiff has located its proposed line of track in accordance with the *Page 58 
principles laid down in Street R. R. v. R. R., 142 N.C. 423, in which the question is discussed by Mr. Justice Hoke.
We have not referred to the large number of exceptions in the record and assignments of error in regard to his Honor's ruling upon the admissibility of testimony. They are not discussed in the brief nor do they appear to be relevant to the substantial merits of the controversy. Upon a careful examination of the entire record, we find no error in his Honor's conclusions of law or judgment, "That the order of the Clerk appealed from be and the same is hereby reversed, vacated and set aside; that plaintiff is not and defendant company is entitled to the right of way over the locus in quo described in the pleadings. It (77) appearing to the court that, under proceedings in this cause, possession of the locus in quo was given to the plaintiff, and that the defendant company was stopped from work on its line on thelocus in quo, it is further considered and ordered that the plaintiff surrender to the defendant company possession of the locus inquo, in order that the defendant may proceed with the work on its line over the locus in quo; that the $500 paid into the Clerk's office be returned to it upon demand." This judgment is affirmed. Upon the certification of the decision of this Court to the Clerk of the Superior Court of Yancey, the Clerk will issue a writ, directed to the Sheriff of said county, to carry into effect the terms of said judgment. The question of damages upon plaintiff's bond, filed pursuant to the order of 9 January, 1906, may be assessed by a jury, or otherwise, if the parties so elect, at the next term of said court. Revisal, sec. 1542.
Affirmed.
Cited: Abernathy v. R. R., 150 N.C. 103; R. R. v. Gahagan, 161 N.C. 192;R. R. v. Oates, 164 N.C. 174; Haddock v. Stocks, 167 N.C. 74.